Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>LUIS RAÚL SANTIAGO ALVARADO<br><br>Peticionario | TA2025CE00195 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: JLA2025G0122; JVI2025G0005<br><br>Sobre: Violación al Debido Proceso de Ley; Inconstitucionalidad de la Ley Penal |
| --- | --- | --- |

Panel especial integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez.

Candelaria Rosa, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 31 de octubre de 2025.

Resolvemos expedir el auto de *certiorari* solicitado mediante el recurso de epígrafe y revocar la determinación impugnada por razón de que el delito de feminicidio, contenido en el Artículo 93(e)(5) del Código Penal, es inconstitucional, ya que vulnera el debido proceso de ley dispuesto en la Sec. 7 del Artículo II de la Constitución del ELA—por razón de vaguedad—al igual que la presunción de inocencia dispuesta en la Sección 11 del referido Artículo II y la garantía contra el discrimen por razón de sexo de la Sección 1 de dicho Artículo II. Por tanto, declaramos ha lugar la petición de desestimación de la acusación presentada ante el foro recurrido bajo la Regla 64 (p) de Procedimiento Criminal con respecto a dicho Artículo 93(e)(5).

Como se sabe, el auto de *certiorari* es un vehículo procesal extraordinario mediante el cual un tribunal de mayor jerarquía puede, a

su discreción, revisar una decisión de un tribunal inferior con respecto a errores de derecho procesal o sustantivo. *Pueblo v. Díaz de León*, 176 DPR 913 (2009). La función de un tribunal apelativo frente a la revisión de controversias a través del *certiorari* requiere valorar la actuación del foro recurrido y predicar su intervención en si la misma constituyó un abuso de discreción, por lo que en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no procede intervenir con las determinaciones del Tribunal de Primera Instancia. *Pueblo v. Toro Martínez*, 200 DPR 834 (2018); *Zorniak Air. Servs. v. Cessna Aircraft Co.*, 132 DPR 170 (1992). A su vez, las Reglas 193-217 de Procedimiento Criminal (34 LPRA Ap. II) y la Regla 40 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B), establecen los criterios a tener en cuenta en el ejercicio discrecional de expedir tal auto.

En particular, el recurso de *certiorari* del epígrafe fue presentado por Luis Raúl Santiago Alvarado a fin de solicitar que revoquemos la *Resolución* del Tribunal de Primera Instancia, Sala Superior de Ponce, emitida el 10 de julio de 2025, mediante la cual se denegó su moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, en relación con una acusación en su contra por el delito de feminicidio, según dispuesto por el Artículo 93(e)(5) del Código Penal, 33 LPRA sec. 5142. De acuerdo con el expediente, el 16 de febrero de 2025, Mildred Beatriz Colón murió a causa de varios disparos de un arma de fuego. Ese mismo día, el señor Santiago acudió a un cuartel en el Municipio de Juana Díaz y entregó un arma de fuego junto a una cuchilla, a la vez que informó que mató a la señora Colón luego de que ésta hubiese tratado de asesinarlo. Por estos hechos, se denunció al señor Santiago de cometer el referido delito de feminicidio

y de infringir el Artículo 6.14(a) de la Ley de Armas, Núm. 168-2019, 25 LPRA sec. 466m.

Durante la vista preliminar, Kelly Aisha Santiago Colón, hija del peticionario y la presunta víctima, declaró que previamente este había manifestado conducta agresiva en contra de su madre. Sostuvo (1) que el 2 de agosto de 2024 se encontró con su madre en el aeropuerto y esta le manifestó que "ya no aguantaba más" e iba a separarse del señor Santiago Alvarado; (2) que en diciembre de 2024 su madre entró a su casa gritándole que el peticionario "chamboneó" una pistola para matarla; (3) que el 2 de febrero de 2025 el peticionario llamó a su madre por teléfono y empezó a insultarla mediante *speaker*; y (4) que alrededor de hace cuatro o cinco años tuvo que intervenir entre su padre y su madre cuando este levantó su mano para agredirla. Culminada la vista preliminar, el Tribunal de Primera Instancia determinó la existencia de causa probable para creer que el señor Santiago Alvarado cometió los delitos descritos en el Artículo 93(e)(5) del Código Penal, *supra*, y el Artículo 6.14(a) de la Ley Núm. 168-2019, *supra*.

Posteriormente, el peticionario solicitó la desestimación de la acusación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, bajo el argumento, entre otros, de que el Artículo 93(e)(5) es inconstitucional. Luego del Ministerio Público oponerse, el Tribunal recurrido resolvió no ha lugar la petición de desestimación. Insatisfecho, el peticionario recurrió ante este Tribunal para alegar que el Tribunal de Primera Instancia erró al rechazar su petición de desestimación y el Ministerio Público presentó su oposición. El 25 de septiembre de 2025 celebramos una vista oral y, en consideración de los argumentos esbozados en esta, junto al resto de los escritos de las

partes y la totalidad del expediente, procedemos a fundamentar nuestra adjudicación, según ya intimada.

Según se sabe, la Regla 64(p) de Procedimiento Criminal, *supra,* faculta a un acusado de delito a solicitar la desestimación de este cuando la acusación se haya presentado sin determinarse causa probable con arreglo a la ley y a derecho. *Pueblo v. Guadalupe Rivera,* 206 DPR 616 (2021) (citando a *Pueblo v. Negrón Nazario,* 191 DPR 720 (2014)). Para ello, el tribunal tendrá discreción para señalar una vista para entender y recibir prueba sobre el planteamiento bajo dicha Regla 64(p) o igual puede rechazarla si de su faz y de las constancias en el expediente no resulta meritoria. *Pueblo v. González Pagán,* 120 DPR 684 (1988) *(citando a Pueblo v. Tribunal Superior,* 104 DPR 454 (1975)). Dicha causa probable se adjudica mediante una vista preliminar. *Pueblo v. Jiménez Cruz,* 145 DPR 803 (1998). Allí se valora si existe una probabilidad razonable de que la persona imputada cometió el delito y que existe evidencia competente para justificar que el imputado espere por un juicio en su fondo. *Noeller v. Wojdylo,* 922 F.3d 797 (7mo Cir. 2019) (citando a *Hoxha v. Levi,* 465 F.3d 554 (3er Cir. 2006)); *Dempsey v. Bucknell University,* 834 F.3d 457 (3er Cir. 2016) (citando a *Wilson v. Russo,* 212 F.3d 781 (3er Cir. 2000)); *Pueblo v. Andaluz Méndez,* 143 DPR 656 (1997).

Dicha vista preliminar tiene como propósito principal evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal. *Pueblo v. Nieves Cabán,* 201 DPR 853 (2019) (citando a *Pueblo v. Negrón Nazario, supra; Pueblo v. Fernández Rodríguez,* 183 DPR 770 (2011); *Pueblo v. García Saldaña,* 151 DPR 783 (2000); *Pueblo v. Andaluz Méndez, supra; Pueblo v. Rodríguez Aponte,* 116 DPR 653

(1985)). Véase, también, Regla 23 de Procedimiento Criminal, *supra*. Compete al Estado, por tanto, presentar prueba sobre los elementos constitutivos del delito imputado y sobre la conexión del imputado con su comisión, a la vez que el imputado podrá presentar prueba a su favor y contrainterrogar a los testigos de cargo. *Pueblo v. Santiago Cruz*, 205 DPR 7 (2020) (citando la Regla 23 de Procedimiento Criminal, *supra*; *Pueblo v. Pillot Rentas*, 169 DPR 746 (2006)). De existir causa probable para acusar, corresponde que el Tribunal de Primera Instancia autorice la presentación de la acusación contra el imputado por parte del Ministerio Público, a la vez que, de no existir causa probable, deberá exonerarlo y ponerlo en libertad si estaba detenido. Íd. (citando a *Pueblo v. Rivera Vázquez*, 177 DPR 868 (2010)).

Esta, desde luego, es la norma que opera ordinariamente y en presunción de que los delitos imputados son válidos, pues, evidentemente, las leyes se presumen constitucionales y cualquier cuestionamiento constitucional requiere determinar si existe una interpretación razonable que permita soslayarlo. *Dalmau Santiago v. Oronoz Rodríguez*, 208 DPR 115 (2021) (citando a *Brau, Linares v. ELA et als.*, 190 DPR 315 (2014); *Nadal v. Depto. Rec. Nat.*, 150 DPR 715 (2000) (*Per Curiam*)). Sin embargo, cuando el contenido de un estatuto penal en principio desorienta el poder del Estado para regular una conducta determinada por razón de la imprecisión en su articulación, este resulta susceptible de ser impugnado al amparo de la doctrina de vaguedad. *Pueblo v. García Colón I*, 182 DPR 129 (2011) (citando a *UNTS v. Srio. de Salud*, 133 DPR 153 (1993); *Velázquez Pagán v. AMA*, 131 DPR 568 (1992)).

Un estatuto es inconstitucional por ser vago cuando el contenido de la conducta prohibida no puede ser determinado luego de sometido a análisis jurídico. L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, 2.ª ed., Pubs. JTS, 2013; *Wainright v. Stone*, 414 US 21 (1973); 1 W.R. LaFave, *Substantive Criminal Law*, 2.ª ed., Eagan, Thomson/West, 2003, pág. 146. Es decir, la ley adolece de vaguedad si (1) una persona de inteligencia promedio no queda debidamente advertida del acto u omisión que el estatuto pretende prohibir y penalizar, (2) se presta a la aplicación arbitraria y discriminatoria; e (3) interfiere con el ejercicio de derechos fundamentales garantizados por la Constitución. *Pueblo v. Arlequín Vélez*, 204 DPR 117 (2020); *Pueblo v. APS Healthcare of PR*, 175 DPR 368 (2009) (citando a *Pacheco Fraticelli v. Cintrón Antonsanti*, 122 DPR 229 (1988)). Véase, además, *Beckles v. US*, 580 US 256 (2017); *Johnson v. US*, 576 US 591 (2015).

Asimismo, la prohibición de la vaguedad se aborda desde el principio de legalidad en el mismo sentido, al disponer que una conducta con relevancia penal tiene que ser adecuadamente definida, de modo que articule efectivamente el comportamiento típico que—de ser realizado de forma antijurídica y culpable—constituye el delito al que se le apareja una pena. Véase, Art. 2 del Código Penal, 33 LPRA sec. 5002. Se trata del requisito de *lex stricta* del principio de legalidad, que impone un grado de precisión a la ley penal que a su vez responde al mandato de determinación que requiere fijar de forma suficientemente diferenciada la conducta punible, a fin de evitar disposiciones generales indeterminadas que generen arbitrariedad. Véase, S. Mir Puig, *Derecho Penal Parte General*, 8.ª ed., Barcelona, Ed. Reppertor, 2008, pág. 107. Necesariamente, el tipo penal debe

reunir los elementos específicos que describen el comportamiento penalmente sancionado mediante conducta concretamente delimitada. Íd., págs. 158-186.

Sin embargo, la doctrina de vaguedad no agota su importancia en establecer un elemento esencial del principio de legalidad, sino que escala su trascendencia al participar de preeminencia constitucional, pues constituye un corolario del debido proceso de ley, en tanto prohíbe la aplicación de un estatuto cuyos términos no revelen clara y adecuadamente cuál es la conducta prohibida. *Pueblo v. Arlequín Vélez*, *supra*; *Pueblo v. APS Healthcare of PR*, *supra* (citando a *Pueblo v. Hernández Colón*, 118 DPR 891 (1987)). Véase, también, Emda. V, Const. EE. UU., LPRA, Tomo 1; Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; *Beckles v. US*, *supra*; *Johnson v. US*, *supra*; A. Bascuñán Rodríguez, *Derecho Penal*, 70 Rev. Jur. UPR 529 (2001). En tal sentido, se ha resuelto que el gobierno viola la garantía constitucional que protege la vida, libertad o propiedad en ausencia de debido proceso de ley "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement". *Johnson v. US*, *supra*, pág. 595. Un ataque constitucional dentro de la lógica de la doctrina de vaguedad implica que, luego de analizar el texto estatutario a la luz del significado jurídico de las palabras y los precedentes judiciales que lo hubiesen interpretado, el estatuto se presta a la aplicación arbitraria y discriminatoria por no ofrecer guías adecuadas de aplicación, con el potencial de infringir derechos fundamentales. *Pueblo v. APS Healthcare of PR*, *supra* (citando a *Rose v. Locke*, 423 US 48 (1975)

(*Per Curiam*); *Wainwright v. Stone*, 414 US 21 (1973) (*Per Curiam*)). Véase E.L. Chiesa Aponte, *op. cit.*

Igualmente acusan vaguedad las leyes con lenguaje excesivamente amplio, al punto de permitir al Tribunal la libertad y ámbito de actuación para decidir qué conducta es la prohibida, sin referencia a un estándar jurídico determinado, de forma que la amplitud confiera al ordenamiento una discreción ilimitad al fijar si una persona ha realizado la conducta sancionada, lo cual permite una aplicación arbitraria y discriminatoria de la ley. Íd. Asimismo, queda claro que, al estar tal doctrina dirigida a examinar la constitucionalidad de la disposición legal de su faz, en lugar de en su aplicación, resulta inocuo evaluar su aplicación a los hechos particulares del caso o si la aprobación del estatuto responde a un interés apremiante del Estado. Íd. Véase, además, *Disidente Univ. de PR v. Depto. de Estado*, 145 DPR 689 (1998); *UNTS v. Srio. de Salud, supra.*

En el caso bajo nuestra consideración, está planteada la inconstitucionalidad del delito de feminicidio contenido en el Artículo 93(e)(5) del Código Penal, *supra.* Al respecto, es necesario apreciar, primero, que el Artículo 92 del Código Penal (33 LPRA 5141) establece que "[a]sesinato es dar muerte a un ser humano a propósito, con conocimiento o temerariamente". Luego, el Artículo 93 de dicho Código determina las instancias variadas en que el asesinato será de primer grado y, en lo que nos resulta pertinente sobre el feminicidio, el Artículo 93(e)(5) dispone particularmente que constituirá asesinato en primer grado:

> (e) Cuando ocurran las circunstancias establecidas en este inciso, el delito de asesinato se identificará como feminicidio. Cualquier sentencia condenatoria emitida por razón de asesinato en esta modalidad de feminicidio indicará tal hecho específicamente.

Se considerará feminicidio todo asesinato en el cual la víctima es una mujer, cuando al cometerse el delito concurre alguna de las siguientes circunstancias:

. . . . . . . .

(5) El sujeto haya realizado actos o manifestaciones esporádicas o reiteradas de violencia en contra de la víctima, independientemente de que los hechos fueran denunciados o no por la víctima.

Al considerar rigurosamente la articulación de dicho delito nos resulta evidente que el mismo adolece de vaguedad, pues al sumar como elementos del delito base de asesinato a los referidos "actos o manifestaciones esporádicas o reiteradas de violencia en contra de la víctima"—para establecerlo en un delito de feminicidio de esa forma ubicua y carente de contenido concreto o delimitación puntual—se acaba configurando un estatuto penal indeterminado, que elude anunciar con especificidad la conducta penal jurídicamente reprochada, soslaya sus guías de aplicación e impide, por consiguiente, que una persona razonable procure evitar incurrir en la misma. Por el contrario, dicha articulación aboca a la inseguridad jurídica, en tanto permite que los organismos del estado—desde policías hasta jueces—insuflen contenido al delito con tal generalidad y de forma tan arbitraria que efectivamente terminan despojando al legislador el poder de definir el delito para arrogárselo intempestivamente y en perjuicio potencial de derechos fundamentales.

Lo cierto es que en el significado viable de tales "actos o manifestaciones de violencia" pueden concurrir, según la perspectiva poliédrica que se escoja, desde actuaciones físicas o expresiones lingüísticas susceptibles de configurar cualesquiera de los otros delitos del Código Penal, hasta actuaciones o expresiones jurídicamente permitidas, pero interpretadas como violentas; todo al arbitrio

desmedido de algún policía o juzgador. La ausencia de concreción acerca de lo que constituyen dichos actos o manifestaciones y la delimitación del modo y extensión en que resultan susceptibles de interpretar como violentos remiten inexorablemente a su indeterminación. Todo cabe en el marco irrestricto de ese lenguaje sin parámetros, mediante el cual se articula el delito bajo nuestra consideración.

Es decir, el lenguaje maleable del estatuto puede acoger desde un ademán visceral hasta una canción antiestética como acto o expresión violenta, respectivamente, sin que para su pertinencia probatoria sea necesaria verificación de denuncia previa, ni límite temporal o parámetros finitos para su sucesión esporádica o reiterada. El estatuto del Artículo 93(e)(5) incluso desborda el lenguaje estatutario considerado en *Johnson v. US, supra*, en el que, al interpretar la frase "violent felony" como parte de una cláusula residual de agravamiento de pena, el Tribunal Supremo Federal, por voz del Juez Antonin Scalia, determinó que la disposición resultaba inconstitucional por vaga y, por tanto, violatoria del debido proceso de ley. Ello a pesar de estar tal calificación de violencia limitada solo a instancias delictivas, contrario al presente caso, en el que el lenguaje disputado abre a la consideración de toda conducta, en la medida en que permite la disquisición de violencia sobre toda una pléyade de actos o manifestaciones, tanto lícitos como ilegales, con respecto a los que no se ofrece circunscripción. Si aún en tales circunstancias de menor incertidumbre relativa dicho foro federal estimó que "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges", *Johnson v.*

*US, supra*, pág. 597, más aún resulta palmario que el margen ingente de especulación requerido por la disposición aquí bajo estudio elucida un grado mayor de vaguedad.

Lo cierto es que la multiplicidad de interpretaciones que acoge el texto bajo estudio, según quien sea el juzgador incidental, derrota el requerimiento constitucional que encumbra a la especificidad del delito como parte del debido proceso de ley. Asimismo, suprime la seguridad jurídica requerida por nuestra estructura constitucional y su sentido garantista frente al derecho penal como *ultima ratio*.

Por otra parte, la articulación del delito de feminicidio aquí explorado plantea también un perjuicio letal en su aplicación práctica, pues menoscaba indefectiblemente el derecho a la presunción de inocencia. Es decir, los elementos del delito que añade al asesinato para ser probados y constituir un feminicidio, relativos a actos o manifestaciones reiteradas o esporádicas de violencia, además de indeterminados, abarcan lapsos anteriores a los hechos del asesinato propiamente dicho. Lo hace con tal distensión y ausencia de restricción en tiempo que hace posible que el juzgador derive su juicio de culpabilidad solo influenciado por actos extemporáneos y ajenos al día o circunstancias en que se infligió la muerte, a pesar de que el principio de culpabilidad exige que el delito pueda imputarse objetiva, subjetiva y personalmente a su autor en determinadas condiciones. Mir Puig, *op.cit.*, págs. 137-138. Esto, irremediablemente en perjuicio de la garantía a la presunción de inocencia, en la medida en que, subrepticiamente, se releva al Estado de probar la culpabilidad del acusado más allá de la duda razonable en referencia a los hechos

materiales y precisos de su ocurrencia. Const. ELA, *supra*, Art. II, Sec. 11; *Pueblo v. Meléndez Monserrate*, 214 DPR 547 (2024).

En otras palabras, dichos actos o manifestaciones anteriores de violencia, aunque de suyo resultan accesorios a la ejecución de la muerte, cargan con el potencial de constituirse como la prueba principal—acaso la única—considerada por un jurado para adjudicar un feminicidio. Ello a pesar de que evidencia de tal naturaleza sería inadmisible en cualquier otro caso y para cualquier otro delito, por ser evidencia de conducta específica traída para probar propensión a incurrir en tal conducta y con el propósito de que se infiera que se actuó de conformidad con tal propensión. Regla 404(b) de las de Evidencia. (32 LPRA Ap. VI). En tales circunstancias, a un jurado le bastaría partir de tales actos o manifestaciones anteriores para intuir violencia, deducir de ellas la propensión del acusado en tal sentido y concluir que se condujo de conformidad en la ejecución del feminicidio. Es decir, más en clave de suposición y sospecha que por convencimiento más allá de duda razonable y a partir de evidencia tangible.

Nos parece evidente, sin embargo, que la admisión de este tipo de prueba no solo es contraintuitiva, sino ajena a nuestra arquitectura constitucional, garantista de derechos fundamentales atinentes a la libertad personal, como el debido proceso de ley y a la presunción de inocencia. No corresponde que la presunción de inocencia pueda ser susceptible de rebatir a base de especulación, sospecha o propensión, sino, más bien, se impone que solo pueda rebatirse con la presentación de prueba satisfactoria y suficiente, aquella que despeje de un juzgador la duda razonable luego de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso. *Pueblo v. García Colón I, supra*

(citando a *Pueblo v. Acevedo Estrada*, 150 DPR 84 (2000); *Pueblo v. De León Martínez*, 132 DPR 746 (1993); *Pueblo v. Carrasquillo Carrasquillo*, 102 DPR 545 (1974)).

De otro lado, el recurso de epígrafe esboza la teoría de que el referido artículo de feminicidio también es inconstitucional porque establece una impermisible clasificación sospechosa por razón de sexo, en la medida en que solo contempla como víctima del delito a una mujer. Propone que ello resulta en violación a la Sección 1 del Artículo II de la Constitución del ELA. Al respecto, el recurrido planteó, por una parte, que el peticionario carecía de legitimación activa y, por otro lado, que aún en los méritos el planteamiento sería improcedente a la luz de *Pueblo v. Rivera Robles*, 121 DPR 858 (1988) y *Pueblo v. Rivera Morales*, 133 DPR 444 (1993).

En cuanto a la legitimación activa, huelga decir que el mayor alcance atribuido al delito de feminicidio en cuanto a cobertura y permisión de evidencia contra el acusado, a propósito de que la víctima es una mujer, coloca al peticionario en una posición más perjudicial ante una posible convicción frente al caso de que el perjudicado fuera un hombre. Eso de suyo le demuestra un interés legítimo en la acción específica presentada. *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559 (1989); *Álvareztorre Muñiz v. Sorani Jiménez*, 175 DPR 398 (2009). Así también, cumple a cabalidad con la referida doctrina en cuanto exige que sólo pueda recurrir a un Tribunal en busca de remedio el litigante que pueda demostrar (1) que ha sufrido un daño claro y palpable; (2) que el referido daño es real, inmediato y preciso, no abstracto o hipotético; (3) que existe una relación causal razonable entre el daño sufrido y la causa de acción ejercitada; y (4) que la causa de

acción surge al palio de la Constitución o de una ley. *Fund. Surfrider v. ARPe*, 178 DPR 563 (2010); *Romero Barceló v. ELA*, 169 DPR 460 (2006). Además, como se establece en la Opinión de Conformidad, *infra*, los propios casos de *Pueblo v. Rivera Robles, supra*, y *Pueblo v. Rivera Morales, supra*, citados por el ministerio público para avanzar su postura, avalaron la legitimación activa de los allí litigantes sin más, en circunstancias similares a las del litigante de autos.[1]

En lo que respecta al planteamiento sobre violación a la garantía contra el discrimen por razón de sexo, la Sección 1 del Artículo II de la Constitución del ELA establece que el gobierno no podrá establecer discrimen alguno por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas. Const. ELA, *supra*, Art. II, Sec. 1. Por su parte, al enfrentar planteamientos equivalentes, el ordenamiento federal los atiende bajo la cláusula de igual protección de las leyes de la Constitución de Estados Unidos. Const. EE. UU., *supra*, Emda. XIV, Sec. 1.

En términos generales, al evaluar clasificaciones sospechosas que se imputan como violación constitucional, la jurisprudencia federal realiza un análisis basado en escrutinios de distinta aproximación a la controversia, según las circunstancias en que esta se suscite. Estos son el escrutinio estricto, el escrutinio intermedio y el escrutinio racional. El escrutinio estricto es el más riguroso y trata de identificar (1) si la clasificación afecta algún derecho fundamental de la persona; (2) si existe un interés apremiante que hace necesaria la actuación estatal; y (3) si el Estado no tenía a su alcance un medio menos oneroso para

---

[1] Para una opinión contraria, véase, *Pueblo v. Piñeiro Santos*, KLAN201402029 (Sánchez Ramos, J.).

lograr el interés articulado. *US v. Skrmetti*, 605 US ___, 145 S.Ct. 1816; 222 L.Ed.2d 136 (2025); *Free Speech Coalition, Inc. v. Paxton*, 606 US 461 (2025); *City of Cleburne, Tex. v. Cleburne Living Center*, 473 US 432 (1985); *San Antonio Independent School Dist. v. Rodríguez*, 411 US 1 (1973). El escrutinio intermedio analiza (1) si la clasificación afecta los intereses individuales importantes que podrían tocar derechos fundamentales no contemplados expresamente en la Constitución federal; y (2) si existe una relación sustancial entre la clasificación y a un objetivo importante gubernamental. *US v. Skrmetti, supra; Clark v. Jeter, supra*. Por último, el escrutinio racional se utiliza cuando la acción estatal objetada no establece clasificaciones sospechosas o no afecta derechos fundamentales, por lo cual la ley se presume constitucional si se establece un nexo racional entre el propósito que quiere alcanzar el Estado con el estatuto y la clasificación establecida. *Armour v. City of Indianapolis, Ind.*, 566 US 673 (2012); *Heller v. Doe*, 509 US 312 (1993).

Al atender controversias de discrimen basado en sexo, la jurisprudencia federal utiliza el escrutinio intermedio en consideración de la inexistencia de una garantía expresa al respecto en la Constitución federal. *Berberena v. Echegoyen*, 128 DPR 864 (1991); *León Rosario v. Torres*, 109 DPR 804 (1980); *Zachry International v. Tribunal Superior*, 104 DPR 267 (1975). Sin embargo, al valorar este tipo de planteamientos bajo nuestro ordenamiento, la jurisprudencia del Tribunal Supremo utiliza el escrutinio estricto, por estar la garantía contra el discrimen por sexo explícitamente determinada en nuestra Constitución, razón por lo cual no tiene que derivarse de ninguna otra cláusula constitucional, como ocurren en el ordenamiento federal.

*Berberena v. Echegoyen, supra; Zachry International v. Tribunal Superior, supra.*

Evidentemente, en este caso corresponde analizar la controversia bajo el escrutinio estricto, por cuanto se establece una clasificación por sexo específica al denominar a una mujer como único sujeto pasivo del delito de feminicidio. *Cf. Pueblo v. Rivera Robles, supra,* y *Pueblo v. Rivera Morales, supra.* Por tanto, el estatuto se presume inconstitucional y sujeto a que El Pueblo demuestre el cumplimiento con los criterios de superación de tal presunción. Es decir, enfrentado a que la clasificación por sexo afecta algún derecho fundamental de la persona, como en este caso la libertad, corresponde al estado demostrar que (1) existe un interés apremiante que hace necesaria la actuación estatal y (2) que el Estado no tenía a su alcance un medio menos oneroso para lograr el interés articulado.

A tales fines, el gobierno agotó su argumentación sobre tales aspectos en los casos de *Pueblo v. Rivera Robles, supra,* y *Pueblo v. Rivera Morales, supra.* En el primer caso, se planteó la violación constitucional porque se discriminaba por razón de sexo en el delito de violación técnica; en el segundo caso, se planteó la violación constitucional en el delito de agresión agravada. En ambos casos el Tribunal Supremo aplicó el escrutinio estricto y decidió que se cumplía con los requisitos de demostrar interés apremiante y ser el medio menos oneroso, esencialmente en función de diferencias con respecto a la condición física y/o biológica entre hombres y mujeres.

En *Pueblo v. Rivera Robles, supra,* se consideró que las consecuencias del embarazo suponían a las mujeres los "consabidos problemas físicos, emocionales y psicológicos serios que ello genera"

en casos de violación técnica. Íd., pág. 875. Mientras que, en *Pueblo v. Rivera Morales, supra*, se evaluó la particular susceptibilidad de las mujeres de sufrir abuso físico al ser agredidas por un varón adulto, principalmente por razón de diferencias corporales, genéticas y sicológicas entre ambos sexos, que dicho Tribunal articuló como:

> [D]ato científico, comprobado empíricamente, que de ordinario los varones de la especie tiendan a ser físicamente más grandes y corpulentos que las mujeres. Desde el punto de vista de la *anatomía*, como regla general, la constitución de la mujer es más liviana y más grácil que la del hombre. Sus cuerpos tienen un por ciento menor de peso muscular; la estructura ósea es más somera; el corazón y los pulmones son menores en proporción al tamaño del cuerpo. Íd., págs. 453-454.

Es en dicha jurisprudencia que El Pueblo agota toda su fundamentación contra el razonamiento del peticionario de inconstitucionalidad por discrimen de sexo. Sin argumentar sobre otras y distintas bases la existencia del interés apremiante del Estado, o que su acción constituya el medio menos oneroso.

No obstante, en el presente caso resulta evidente que el estatuto de feminicidio no incluye razonamiento actual o subyacente alguno que remita su fundamentación a criterios físicos y/o biológicos. Por el contrario, la Ley Núm. 40-2021—que enmendó el Código Penal para incluir el inciso (5) del Artículo 93(e) en controversia—en lugar de establecer dicha suerte de fundamentación sobre elementos físicos y/o biológicos entre los sexos, cimenta sus motivos y fundamentación en conceptos con mayor abstracción, como "la desigualdad de género" o "relaciones asimétricas de poder entre los hombres y las mujeres", junto a la necesidad de recopilación estadística de datos. Ello, necesariamente, desmarca el análisis de la presente controversia del control de la jurisprudencia en que exclusiva y abreviadamente se basó El Pueblo para defender que el estatuto en cuestión no viola la garantía

contra el discrimen por sexo, pues la hace distinguible a su razonamiento y, efectivamente, sustrae su relevancia al punto de hacerla inaplicable al análisis bajo el escrutinio estricto en este caso. Por tanto, en la medida en que el recurrido prescindió de argumentos alternativos a la jurisprudencia citada y renunció a articular los criterios de revisión constitucional por otros medios, queda claro que en este caso la presunción de inconstitucionalidad quedó incólume y subsistió por no haber sido rebatida.[2]

Aun así, cabe destacar que, por exegesis mínima, podemos concluir sin mayor apuro que las bases de la configuración del feminicidio que exhibe la referida exposición de motivos plantea un interés apremiante del Estado demostrable. Sin embargo, igual nos resulta patente que El Pueblo no demostró que la clasificación por sexo sea el medio menos oneroso disponible para resguardar el bien jurídico que constituye la vida de una mujer. Es decir, en todos los códigos penales anteriores, la vida de las mujeres ha estado contenida como un bien jurídico protegido en el delito de asesinato, sin cuestionamiento doctrinal alguno y sin necesidad de particularizar el bien jurídico protegido (la vida) por razón de sexo. Esto, sin más, desmiente que la clasificación sexual pueda ser considerada como el medio menos oneroso para adelantar el interés estatal de protección.

Por las consideraciones expuestas, expedimos el auto de *certiorari* solicitado mediante el recurso de epígrafe y revocamos la determinación impugnada por razón de que el delito de feminicidio, contenido en el Artículo 93(e)(5) del Código Penal, es inconstitucional,

---

[2] Nuevamente, para una opinión contraria, véase, *Pueblo v. Piñeiro Santos*, KLAN201402029 (Sánchez Ramos, J.).

ya que vulnera el debido proceso de ley dispuesto en la Sec. 7 del Artículo II de la Constitución del ELA—por razón de vaguedad—al igual que la presunción de inocencia dispuesta en la Sección 11 del referido Artículo II y la garantía contra el discrimen por razón de sexo de la Sección 1 de dicho Artículo II. Por tanto, declaramos ha lugar la petición de desestimación de la acusación presentada ante el foro recurrido bajo la Regla 64 (p) de Procedimiento Criminal con respecto a dicho Artículo 93(e)(5).

**Notifíquese de inmediato.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Adames Soto emite Voto Particular de Conformidad, al cual se une el Juez Campos Pérez.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| EL PUEBLO DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>LUIS RAÚL SANTIAGO ALVARADO<br>Peticionario | TA2025CE00195 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Núm. JLA2025G0122; JVI2025G0005<br><br>Sobre:<br>Violación al Debido Proceso de Ley; Inconstitucionalidad de la Ley Penal |

Panel especial integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

## VOTO PARTICULAR DE CONFORMIDAD DEL JUEZ ADAMES SOTO

a.

Los jueces transitamos las mismas calles que las demás personas; nuestras hijas acuden a la escuela, al igual que las niñas y jóvenes del País; **observamos los episodios criminales violentos que ocurren a diario, con idéntico espanto al del resto de la población, lacerando también lo más íntimo de nuestro ser.**

Sin embargo, a diferencia de los demás, es atributo único, esencial e irrenunciable de los jueces interpretar la Constitución, aunque en ocasiones el resultado pueda resultar insatisfactorio, ininteligible, o hasta ofensivo para muchos. La tragedia inmediata no permite valorar el significado de los derechos o principios perennes que pretende resguardar para todos nuestra ley mayor.

Uno de estos altos principios es el de no permitir el discrimen por razón de sexo en la aprobación de nuestras leyes, salvo por razones muy excepcionales, y mientras no existan medios menos onerosos para conseguir el fin de la legislación que se propone.

I. Sobre la vaguedad del Art. 93(e)(5) del Código Penal.

## b.

Al atender el señalamiento de error de la parte peticionaria que imputó vaguedad al Art. 93(e)(5) del Código Penal, valga precisar que nuestra atención se dirigió específicamente a considerar si la lectura de dicha disposición legal, de su faz: 1) falla en proveerle a un ciudadano de inteligencia promedio un aviso suficiente de las conductas que proscribe y penaliza; y (2) no le provee a los funcionarios encargados de ponerla en vigor unas guías razonables, de forma tal que se preste para una aplicación arbitraria y discriminatoria interfiriendo con los derechos fundamentales garantizados por la Constitución. *Pueblo v. García Colón I*, 182 DPR 129, 149 (2011). Para realizar tal ejercicio interpretativo[1] nuestro Tribunal Supremo ha manifestado, sin ambages, que **resulta superfluo evaluar si la aprobación de la ley responde a un interés apremiante del Estado, así como su aplicación a los hechos particulares del caso.** Id.

En consonancia, al dirimir la controversia sobre si el Art. 93(e)(5) del Código Penal adolece de vaguedad, nos hemos adherido a la sola lectura del texto, sopesando los criterios que la jurisprudencia nos llama a considerar cuando se lleva a cabo tal ejercicio. Es decir, en este análisis sobre vaguedad **no** cuestionamos en modo alguno si existe un interés apremiante del Estado al aprobar la legislación, sino que, **aun partiendo del reconocimiento del interés apremiante del Estado en introducir un tipo penal para combatir el problema de la violencia doméstica,** o, al decir de las Exposición de Motivos de la Ley Núm. 40-2021, reconociendo **la relación asimétrica de poder entre los hombres y las mujeres,** el Art. 93(e)(5) adolece de vaguedad, según la acepción jurídica de este adjetivo, y por ello, resulta inconstitucional.

---

[1] Por cuanto ya resulta *cliché* la explicación, no me detengo en consideraciones sobre si el estatuto es vago *debido a que requiera interpretación*. Simplemente, cada texto requiere interpretación, de modo que ello, de suyo, no puede ser causa de vaguedad al sopesar su constitucionalidad.

## c.

Por otra parte, aunque la sola lectura del texto debería ser el único referente para verificar si adolece de vaguedad, -sin tener que acudir a fuentes externas para suplir por la vía judicial lo que el legislador omitió- no puedo abstenerme de puntualizar que el resultado hoy alcanzado fue previsto y expresamente advertido durante el proceso de aprobación de la legislación impugnada. Me explico.

Al Departamento de Justicia de Puerto Rico comparecer ante la Comisión de lo Jurídico del Senado de Puerto Rico, mediante escrito de 2 de febrero de 2021, para emitir sus comentarios legales sobre el Proyecto del Senado Núm. 130, (que eventualmente resultó en la aprobación de la Ley Núm. 40-2021, donde se introdujo el Art. 93(e)(5) del Código Penal), se vio impedido de apoyar la legislación, en tanto esta adolecía de varios vicios de inconstitucionalidad. De hecho, gran parte de los referidos comentarios fueron dedicados a ilustrar sobre la jurisprudencia interpretativa del concepto *vaguedad* en el contexto de la legislación penal, y su vínculo con el debido proceso de ley, para entonces identificar incisos puntuales de la legislación propuesta que cabían ser identificados como tales.

En lo que nos concierne, entre las enmiendas promovidas al Código Penal a través del P. del S. Núm. 130, el Departamento de Justicia prestó particular atención a la constitucionalidad del sub inciso (d) de la enmienda al Art. 93(e), que dictaba en su forma propuesta lo siguiente:

> "existen antecedentes o *datos de cualquier tipo de violencia* en el ámbito familiar, laboral o escolar, del sujeto activo en contra de la víctima" (Énfasis provisto).

Nótese la semejanza de dicho tipo penal con el inciso (5) del Art. 93(e)[2], que hoy determinamos es inconstitucional por vaguedad. Sobre la enmienda propuesta citada, el Departamento de Justicia advirtió que, *no provee un parámetro claro para establecer qué se ha de considerar un*

---

[2] El Art. 93(e)(5) del Código Penal actual no formó parte del P. del S. Núm. 130 original, sino que fue incluido en algún momento posterior del proceso legislativo, aunque del historial legislativo no logré encontrar bajo qué circunstancias.

*"dato" de violencia,* por lo que, *en ausencia de definiciones o parámetros que delimiten el alcance de tal término, tal como redactado, adolece de amplitud excesiva y vaguedad*[3].

Luego, y tal como determinamos en la *Sentencia* que hoy suscribo, el Departamento de Justicia subrayó en su ponencia que; "la premisa más importante de la doctrina de vaguedad sobre una ley descansa en la posibilidad de que la ley pueda ser aplicada de manera arbitraria y discriminatoria, por no existir guías que delimiten la discreción de los funcionarios gubernamentales que delimiten la discreción de los funcionarios"[4].

Es notable observar que el Colegio de Abogados y Abogadas de Puerto Rico también se permitió un tono muy similar al utilizado por el Departamento de Justicia, cuando opinó sobre el P. del S. 130, en ponencia escrita de 24 de febrero de 2021. Allí, a pesar de iniciar reconociendo como *loable* el interés del cuerpo legislativo para atender la problemática social de la violencia doméstica a través de la legislación bajo discusión, advirtió que, según redactada, presentaba vicios de inconstitucionalidad. Entonces, idéntico al Departamento de Justicia, identificó los incisos del referido proyecto de ley que *adolecían de vaguedad, eran ambiguos o demasiado amplios.* En específico, sobre la premisa contenida en el Art. 93(d) propuesto, consignó:

> **Es vaga, ambigua y demasiado amplia.** La aplicación de la misma resultaría en una violación al debido proceso de ley y afectaría adversamente el desempeño del Ministerio Público al tratar de probar algunos de los elementos del delito conforme a dicho inciso. **Para que una ley pueda ser aplicada correctamente no puede carecer de ambigüedad en su definición**[5]. (Énfasis provisto).

No conforme, la misma institución abundó sobre la expresión "datos de cualquier tipo de violencia en el ámbito familiar" incluida en el inciso

---

[3] Ponencia del Departamento de Justicia de 2 de febrero de 2021 ante la Comisión de lo Jurídico del Senado de Puerto Rico, sobre el Proyecto del Senado Núm. 130, pág. 5.
[4] Id.
[5] Memorial explicativo del Colegio de Abogados sobre el P. del S. 130, de 24 de febrero de 2021, pág. 3.

(d) de la enmienda al Art. 93, de la cual dijo que **"quedaría al criterio subjetivo de quien lo aplique sin establecer guías para que los ciudadanos entiendan cuál es la intención del legislador y qué sería específicamente los hechos que se considerarían para que se configure el mismo"**[6]. Concluyó poniendo el acento en el aspecto educativo, antes que el punitivo, como vía para atender el problema que la Legislatura deseaba atajar[7].

Sin que el ejercicio interpretativo sobre vaguedad precise de ello, insisto, lo cierto es que, sopesadas tales comparecencias, juzgo que el resultado final del proceso legislativo, que culminó en la aprobación del vigente Art. 93(e)(5), no logró librarlo de las denuncias sobre inconstitucionalidad por vaguedad recogidas en los párrafos que preceden, según se precisa en la Sentencia que suscribo.

## II. Sobre la calificación sospechosa por razón de sexo

a.

Mediante su escrito el peticionario también nos convocó a llegar a idéntica conclusión sobre la inconstitucionalidad del delito por el cual fue acusado, pero por vías de la calificación sospechosa por razón de sexo que entraña. Se refiere a que el Art. 93(e)(5) del Código Penal solo identifica como sujeto pasivo del tipo a una mujer, *ergo,* excluye a los hombres como posibles víctimas del delito.

Con precisión, el Art. 93(e)(5) del Código Penal dispone, en lo pertinente, lo que sigue:

> (e) Cuando ocurran las circunstancias establecidas en este inciso, el delito de asesinato se identificará como feminicidio. Cualquier sentencia condenatoria emitida por razón de asesinato en esta modalidad de feminicidio indicará tal hecho específicamente.

---

[6] Id.

[7] En una ponencia posterior, de 21 de abril de 2021, el Colegio de Abogados y Abogadas de Puerto Rico endosó el Proyecto bajo discusión, **pero sin incluir expresión alguna acerca de las preocupaciones sobre inconstitucionalidad que antes había plasmado, y para las cuales se mostró contundente, ni cómo hubiesen sido superadas de manera que permitieran el cambio de postura.**

> Se considerará feminicidio todo asesinato en el cual **la víctima es una mujer** cuando al cometerse el delito concurre alguna de las siguientes circunstancias:
>
> (1) ...
> (2) ...
> (3) ...
> (4) ...
> (5) El sujeto haya realizado actos o manifestaciones esporádicas o reiteradas, de violencia en contra de la víctima, independientemente de que los hechos fueran denunciados o no por la víctima;
>
> (Énfasis provisto).

Por su parte, la Oficina del Procurador General de Puerto Rico opone que el peticionario carece de legitimación activa para levantar dicho planteamiento. Siendo específico, el Pueblo adujo que el peticionario *pretende abogar, de forma genérica y estereotipada, a favor de los derechos de las víctimas masculinas, a pesar de que sus derechos no se ven afectados como acusado del delito*[8]. A esto añadió que: ya nuestro Tribunal Supremo había refrendado la constitucionalidad de dos estatutos penales que concebían modalidades delictivas en las cuales las víctimas solamente podían ser mujeres, *Pueblo v. Rivera Morales*, 133 DPR 444 (1993) y *Pueblo v. Rivera Robles*, 121 DPR 858 (1988), y; en la mayoría de los casos, las mujeres son las víctimas de tales actos, persiguiendo así la legislación una política pública apremiante.

b.

No debe causar mayor dificultad reconocer que el Art. 93(e) del Código Penal establece una clasificación sospechosa por razón de género[9], al limitar el sujeto pasivo del tipo a una mujer, lo que supone la exclusión del hombre como posible víctima.

Entonces, distinto a la opinión del Pueblo, no discierno obstáculo para reconocerle legitimación activa al peticionario cuando reta la constitucionalidad de dicha clasificación, en la misma medida que a

---

[8] Alegato del Pueblo de Puerto Rico, pág. 27.
[9] Utilizo el nombre-sustantivo *género* según la acepción que de este surge del Art. 14(y) del Código Penal, según la cual; *se refiere a los dos sexos, masculino y femenino, en el contexto de la sociedad*. En consonancia, cuando aluda a los sustantivos *sexo* o *género* deberán ser entendidos como de igual significado, por tanto, intercambiables.

nuestro Tribunal Supremo tampoco parece haberle preocupado mucho tal asunto cuando resolvió los ataques a la constitucionalidad de los Artículos 99(a) y 95(d) del derogado Código Penal de 1974, por causa de clasificación sospechosa por razón de género, según planteados en *Pueblo v. Rivera Morales*, supra, y en *Pueblo v. Rivera Robles*, supra. Es de notar, además, que, entre otros[10], ya la profesora Dora Nevárez preveía un ataque a la constitucionalidad de una ley penal semejante, en la que solo la mujer figurara como sujeto pasivo del tipo. Ver, Dora Nevárez Muñiz, *Código Penal de Puerto Rico: Ley 146-2012, 2019*, pág. 159.

Superado lo anterior, resulta propio resaltar que el Tribunal Supremo de Puerto Rico ha reiterado que, a diferencia de la Constitución de los Estados Unidos, nuestra Constitución *prohíbe expresamente el discrimen por razón de sexo*. Art. II, Sec. 1, Const. E.L.A., L.P.R.A., Tomo 1; *Pueblo v. Rivera Morales*, supra; *Pueblo v. Rivera Robles*, supra. Es decir, a distinción de la Constitución de los Estados Unidos, la de Puerto Rico contiene una disposición específica, la Sec. 1 aludida, que prohíbe el discrimen por razón de sexo. Por motivo de tal prohibición expresa, al enfrentar una clasificación sospechosa por razón de sexo, se activa el "riguroso" *escrutinio estricto*[11]. *Pueblo v. Rivera Morales*, supra, pág. 874; *Pueblo v. Rivera Robles*, supra; *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 729 (1980); *Zachry International v. Tribunal Superior*, 104 D.P.R. 267 (1975).

---

[10] Ver, Ponencias del Departamento de Justicia y del Colegio de Abogados y Abogadas de Puerto Rico, según antes citadas, de 2 de febrero de 2021 y 24 de febrero de 2021, respectivamente; Laiza M. Paravasini Domenech, *El estatuto de violación técnica: la igual protección de las leyes*, 38 Rev. Der. P.R., 1999, pág. 5.

[11] A distinción del "riguroso" *escrutinio estricto*, (así calificado por nuestro Tribunal Supremo en *Pueblo v. Rivera Morales*, supra, pág. 874), el Tribunal Supremo Federal utiliza el *escrutinio intermedio* cuando considera la constitucionalidad de una ley por causa de una clasificación sospechosa por sexo. Ver, *U.S. v. Skrmetti*, 606 U.S. (2025); *U.S. v. Virginia*, 518 U.S. 515 (1996). Cuando cito esta *presunta* distinción entre el escrutinio que utiliza la Corte Suprema Federal *vis a vis* el que utiliza nuestro Tribunal Supremo, resuena en mi mente la pregunta retórica planteada por el profesor J.J. Álvarez González; "**¿de qué vale** *decir* **que los discrímenes por género reciben un tratamiento judicial más riguroso en Puerto Rico si basta el razonamiento bajo un criterio más laxo para satisfacerlo?**". J.J. Álvarez González, *Derecho Constitucional de Puerto y relaciones constitucionales con los Estados Unidos*, Editorial Temis S.A., 2010, pág. 871.

Con todo, y según ocurre con los derechos constitucionales en general, estos no son absolutos. De aquí que, a pesar de la inclusión en nuestra constitución de una sección que expresamente prohíbe el discrimen por razón de sexo, "esto no significa que sea constitucionalmente inválida toda distinción legal fundamentada en género". *Pueblo v. Rivera Morales*, supra, pág. 448. De esta forma, "las diferencias fisiológicas que se dan entre los sexos pueden justificar legítimamente en algunas situaciones concretas el trato diferencial de la mujer y el varón", como, por ejemplo, "la maternidad, que resulta en una base legítima para conceder derechos solo al sexo femenino". Id. De aquí que, "no pueden extenderse prohibiciones absolutas que impidan el ejercicio legítimo del poder de reglamentación del Estado para aprobar medidas razonables con el objetivo de salvaguardar el interés común". Id, a la página 449.

En cualquier caso, lo cierto es que, una vez determinado que aplica el escrutinio estricto, el estatuto impugnado se presumirá inconstitucional y **su validez dependerá de que cumpla con los siguientes _tres_ requisitos:**

> 1. Que el Estado demuestre la existencia de un propósito gubernamental apremiante o de la más alta jerarquía.
>
> 2. Que exista una relación o nexo entre la clasificación y el propósito gubernamental.
>
> 3. Que la clasificación sea la alternativa menos restrictiva del interés social protegido. *Pueblo v. Rivera Morales*, supra; *Pueblo v. Rivera Robles*, supra; *Com. de la Mujer v. Srio. de Justicia*, supra; *Zachry International v. Tribunal Superior*, supra.

Es decir, el Estado está obligado a probar que *la clasificación legislativa tiene un propósito apremiante de beneficio al interés común, que no existen alternativas menos drásticas y, además, que es necesaria.* *Com. de la Mujer v. Srio. de Justicia*, supra.

c.

A modo de despejar cualquier duda, doy por un hecho indubitado la existencia de un propósito gubernamental apremiante, de la más alta jerarquía, que provocó la aprobación del Art. 93(e)(5) del Código Penal; además de la relación causal entre el tipo introducido al Código Penal con la aspiración de detener la conducta prohibida. La crudeza y persistencia del problema de la violencia doméstica en Puerto Rico, particularmente la que preeminentemente se repite del hombre hacia la mujer en diferentes ámbitos, que desborda el solo espacio doméstico, señala un rumbo decisional claro al considerar los dos primeros criterios del escrutinio estricto. Detener, atajar, contener, eliminar, abolir las muertes violentas que acontecen en este contexto resulta en un valor de la más alta jerarquía, de modo que la legislación que sirva para disuadir o modificar tales conductas entraña un propósito gubernamental apremiante.

Si bajo el escrutinio estricto bastara la consideración de los dos primeros criterios señalados, no cabría mayor análisis sobre la constitucionalidad del Art. 93(e)(5) del Código Penal, pues solo procedería reconocerlo como tal.

Sin embargo, el examen de la constitucionalidad del Art. 93(e)(5) del Código Penal no se agota o detiene con la consideración de solo dos de los tres criterios que enumera el escrutinio estricto, sino que también impone sopesar el restante. Juzgo que la consideración de los tres requisitos aludidos, sin tomar atajos, exhibe respeto a la jerarquía de nuestra Constitución, cuando expresamente prohíbe legislación que discrimine por razón de sexo.

Sentadas las bases de cómo se conducirá el resto de la evaluación sobre el Art. 93(e)(5) del Código Penal, conózcase que, en su comparecencia ante nosotros, el Pueblo no se ocupó de discutir si la legislación impugnada cumplía con los criterios del escrutinio estricto, a pesar del señalamiento expreso en el recurso de *certiorari* sobre la existencia de una

clasificación sospechosa por razón de sexo en el Art. 93(e)(5) del Código Penal. Habiendo releído el escrito del Procurador General infiero que tal omisión podría ser atribuible a dos razones: su convicción de que el peticionario carecía de legitimación activa para plantear la constitucionalidad del estatuto; que el razonamiento del Tribunal Supremo en *Pueblo v. Rivera Morales* y *Pueblo v. Rivera Robles*, supra, resulta perfectamente trasladable al articulado que aquí se trata de impugnar, sin que quepan distinciones notables.

Acerca de esto último, cabe apuntar que, luego de emitidas las referidas Opiniones, en las cuales descansa el Procurador General para no elaborar sobre la constitucionalidad del Art. 93(e)(5) del Código Penal, se pudo observar un movimiento en la *praxis* legislativa al designar los sujetos activos y pasivos en los tipos penales utilizando lenguaje neutro, en lugar de persistir en la designación única de la mujer como sujeto pasivo de un tipo penal. Relacionado a lo dicho, en su tratado sobre Derecho Constitucional, el profesor J.J. Álvarez González nos ilustra:

> El primero *(Pueblo v. Rivera Robles)* validó 5-2 la penalización de la relación sexual con una **mujer** menor de 14 años, aunque no se penalice conducta similar con un varón menor de esa edad. Art. 99(a) del Código Penal de 1974, 33 LPRA § 4061(a). **Esa clasificación se eliminó** en el art. 142 del Código Penal de 2004, 33 LPRA § 4770 (se comete el delito de agresión sexual cuando la víctima, **independientemente de su género**, es menor de 16 años). El segundo caso *(Pueblo v. Rivera Morales)* validó 4-3 una clasificación por género que establecía el art. 95(d) del Código Penal de 1974, 33 LPRA § 4032(d) (agresión es agravada si se comete por varón adulto **sobre una mujer**). **Esa clasificación por género también se eliminó** en el art. 122 del Código Penal de 2004, 33 LPRA §4750. J.J. Álvarez González, *Derecho Constitucional de Puerto y relaciones constitucionales con los Estados Unidos*, Editorial Temis S.A., 2010, pág. 817. (Énfasis provisto).

Lo anterior resulta de más calado cuando se considera que uno de los argumentos esgrimidos por el Tribunal Supremo para sostener la constitucionalidad del tipo penal en *Pueblo v. Rivera Morales*, supra, pág. 450, fue que, precisamente, el Art. 95 del Código Penal, **"había subsistido con enmiendas en todas las múltiples revisiones y reformulaciones que ha tenido el derecho penal de Puerto Rico"**, y, **"ello es muy significativo porque demuestra que la Asamblea Legislativa..., no ha encontrado tacha o defecto constitucional alguno en la modalidad de**

**agresión agravada en cuestión"**. (Énfasis y subrayado provistos). No obstante, y según cité del profesor J.J. Alvarado González, posterior a las referidas Opiniones, **la Asamblea Legislativa** en efecto **eliminó las clasificaciones por género en las sucesivas enmiendas aprobadas al Código Penal**.

Por tanto, de ser coherentes con el razonamiento del Tribunal Supremo en *Pueblo v. Rivera Morales*, supra, o bajo su misma lógica, **también cabría identificar para el caso ante nuestra consideración como *muy significativa* <u>la eliminación por la Legislatura de la clasificación previa por sexo en los delitos</u>, y concluir que ello obedeció a que esta encontró *tacha o defecto constitucional*, de haber persistido la utilización de la clasificación sospechosa por género en el tipo penal**.

En perfecta armonía con lo que precede, la Ley Núm. 54-1989, según enmendada, *Ley para la prevención e intervención con la violencia doméstica*, (Ley 54), 8 LPRA sec. 601 *et seq*, también utilizó un lenguaje neutro al referirse tanto al sujeto activo, como al pasivo, en los tipos penales que incluyó, decantándose en favor de la nomenclatura *persona*. Así expresamente lo reconoció nuestro Tribunal Supremo, por ejemplo, cuando al describir los elementos del tipo contenido en el entonces Art. 3.3 de la Ley 54, (hoy Art. 6 de la Ley 54, según enmendada, 8 LPRA sec.633), resaltó, en lo pertinente, que los delitos allí descritos *compartían el mismo sujeto activo, toda persona, y el mismo sujeto pasivo. Pueblo v. Ayala García,* 185 DPR 196 (2012).

Persistiendo en la observación sobre la Ley 54, me parece destacable que, en su aprobación, y a través de sus múltiples enmiendas, el Legislador pudiera perfectamente conciliar el reconocimiento de que "la violencia doméstica es una de las manifestaciones más críticas de los efectos de <u>la inequidad en las relaciones hombres y mujeres</u>", Art. 1 de la Ley 54, 8 LPRA sec. 601. (énfasis y subrayado provistos), con el lenguaje

neutro al identificar el sujeto activo y pasivo del tipo penal, **evitando así introducir una calificación por género que resultara lesiva al Art. II, Sec. 1, Const. E.L.A.** La oración citada de la Ley 54 no me parece transaccional, ni aleatoria, sino que merece ser interpretada como un reconocimiento de que **es la mujer en particular la que sufre en mayor medida tan terrible problema,** no obstante, **esta realidad no ha impedido la reiteración del lenguaje neutro al plasmar el tipo penal a través de las enmiendas a dicho estatuto.**

Íntimamente relacionado a ello me resulta lo afirmado en la *Exposición de Motivos* la Ley 40-2021, a través de la cual se incorporó el Art. 93(e)(5) bajo examen, al reconocer "la violencia de género como una de las manifestaciones del discrimen **cuya causa principal es la desigualdad de género**, ello es, <u>la relación asimétrica del poder entre los hombres y las mujeres</u>". (Énfasis y subrayado provistos). Lo subrayado muestra perfecta consonancia con el propósito por el cual fue aprobada la Ley 54, al identificar la violencia doméstica como *una de las manifestaciones más críticas de los efectos de la **inequidad en las relaciones hombres y mujeres,*** supra. Véase que, a pesar de las referidas legislaciones compartir propósitos o motivos tan similares, (sino idénticos), en la Ley 54 ha subsistido el lenguaje neutro en los tipos penales, mientras que en el Art. 93(e)(5) se optó por la exclusión del hombre al identificar el sujeto pasivo, no obstante, la expresa prohibición constitucional sobre el discrimen por razón de sexo.

A lo hasta aquí dicho se debe añadir la expresión de nuestro Tribunal Supremo en términos de que:

> "aunque como regla general las víctimas más frecuentes de la problemática (violencia doméstica) son las mujeres y niños, grupos que históricamente han sufrido los efectos más desgarradores de la violencia, la pobreza y el discrimen... No obstante, la Ley 54, **aunque generalmente en su aplicación protege a las mujeres víctimas del maltrato, <u>se creó también para proteger a los hombres que, en ocasiones, también son víctimas silentes de este triste drama</u>**". *Pueblo v. Ruiz*, 159 DPR 194 (2003), citando a *Pueblo v. Figueroa*

*Santana*, 154 DPR 717, 724 (2001). (Énfasis y subrayado provistos).

De hecho, en la Opinión que precede se trató de un caso de violencia doméstica bajo la Ley 54 en el que el sujeto pasivo fue un hombre. Es decir, los hombres pueden ser, y han sido, víctimas de violencia doméstica, en casos gravísimos que han desembocado en asesinato[12]. De lo que se sigue que ya ha habido una expresión clara y reiterada de nuestro Tribunal Supremo a efectos de que el hombre puede ser el sujeto pasivo en incidentes de violencia doméstica, no solo la mujer.

Sopesados los párrafos que preceden, como se preverá, me resulta muy difícil sostener o admitir que la clasificación sospechosa por sexo incluida en el Art. 93(e)(5) del Código Penal pueda tildarse como *la alternativa menos restrictiva para lograr el interés social protegido*, o, que pueda decirse de esta *que no existen alternativas menos drásticas*. **La experiencia legislativa y jurisprudencial hasta el momento apuntan a que la inclusión de lenguaje neutral en el tipo penal, respetuoso del Art. II, Sec. 1 de nuestra Constitución, en modo alguno obstaculiza, o desmerece el propósito legislativo que tiene por objeto atajar y combatir decididamente el gravísimo problema de la violencia entre parejas, aun cuando se reconozca que tal problemática es particularmente repetida y sufrida por la mujer como víctima. Es decir, existe una comprobada *alternativa menos restrictiva o drástica para lograr el interés social protegido*, bastando la incorporación de lenguaje neutro en el sujeto pasivo del tipo penal.**

d.

Al argumentar sobre la constitucionalidad del Art. 93(e)(5) del Código Penal, el Pueblo también nos refiere a la porción de la *Exposición de Motivos* de la Ley 40-2021 donde se indica lo que sigue:

---

[12] Aunque han pasado varias décadas de ello, en buena parte de la memoria colectiva debe pervivir el recuerdo de los horrendos hechos que condujeron a la muerte del Sr. Luis Vigoreaux. *Pueblo v. Echevarría Rodríguez*, 128 DPR 299 (1991).

"[e]n el estudio de los homicidios, hay que segregar por sexo, porque los asesinatos ocurren, en su mayoría, por la carga que se le atribuye al género, y considerando las limitaciones e invisibilidades de la categoría 'sexo' **en los estudios estadísticos**. No podemos hablar de homicidios si no hablamos de las identidades de género, sus roles y sus violencias. Por eso, los asesinatos de las mujeres hay que nombrarlos como tal, como feminicidios". (Énfasis provisto).

Lo cierto es que, examinada en integridad la *Exposición de Motivos* de la Ley citada, buena parte de su contenido refiere a la necesidad del Estado de recopilar o documentar información relativa a los feminicidios, según se cita en el párrafo que precede. De hecho, la referida *Exposición de Motivos* finaliza afirmando que, *mientras no existan mecanismos confiables y comparables **para la recolección de datos para cierto tipo de crimen** (refiriéndose al feminicidio), no existirán formas apropiadas para entenderlo, ni estrategias efectivas para combatirlo*. (Énfasis provisto).

Sobre lo anterior, no pongo en duda que el Estado tenga un interés apremiante que justifique incorporar mediante legislación mecanismos confiables para afinar la compilación de datos estadísticos certeros acerca del feminicidio, y que de esto pueda depender en gran medida una respuesta gubernamental efectiva al problema. Sin embargo, una vez más, esta afirmación serviría para disponer de los primeros dos criterios que nos exige considerar el escrutinio estricto, no así del tercero.

Entonces, refiriéndome al tercero de tales criterios; ¿podría alcanzarse el propósito de *recopilar de información estadística* que atiende la legislación, sin recurrir a incluir la clasificación sospechosa por sexo en el Art. 93(e)(5) del Código Penal? Dicho de otra forma; ¿existían alternativas *menos restrictivas o drásticas* para lograr alcanzar la compilación de datos más certeros sobre los feminicidios?

Para dar respuesta a tales interrogantes resulta útil nuevamente acudir a las ponencias presentadas por el Departamento de Justicia y el Colegio de Abogados y Abogadas de Puerto Rico sobre el P. de la S. 130. Veamos.

Por una parte, en la ponencia del Departamento de Justicia de 2 de febrero de 2021, pág. 8, se indicó sobre la compilación de datos

estadísticos sobre el feminicidio que, "el fin legislativo promovido ya había sido atendido por otros medios jurídicamente adecuados, como lo fue la Orden Ejecutiva OE-2021-013". Es decir, a juicio del Departamento de Justicia al presentar su ponencia, el propósito legislativo de recopilar datos sobre feminicidios era alcanzable **a través de una orden ejecutiva**, de modo que resultaba innecesaria la inclusión de un agravamiento en el tipo penal para ello.

En términos semejantes, el Colegio de Abogados y Abogadas de Puerto Rico plasmó en su primera comparecencia escrita sobre el P. de la S. 130[13], que si "lo que el Estado persigue es obtener unas estadísticas referentes a los delitos cometidos contra la mujer y la mujer transgénero **debe establecer instrucciones claras a las Instituciones de Estadísticas de Puerto Rico, Policía de Puerto Rico, Tribunales, Departamento de Justicia y asignarle los fondos y los recursos necesarios para conseguir ese fin**".

Aunque torne en repetitivo, de lo apuntado se sigue que, si el propósito de la enmienda al Código Penal introducida a través de la Ley 40-2021, era el de precisar estadísticas sobre el feminicidio, allegando datos certeros sobre ello, **no** se necesitaba limitar el sujeto pasivo del tipo a que fuera una mujer, con exclusión del hombre, existiendo alternativas *menos restrictivas o drásticas* para lograr alcanzar este alto interés social.

e.

Por los fundamentos contenidos en la Sentencia que hoy suscribo, junto a las razones que aquí ofrezco, juzgo que acusa vaguedad el Art. 93(e)(5) del Código Penal, a la vez que incluye una clasificación sospechosa irrazonable por razón sexo, que la torna en inconstitucional, al excluir al hombre como posible sujeto pasivo en el tipo, disponiéndose de alternativas *menos restrictivas o drásticas* para alcanzar igual propósito.

---

[13] Especifico que me refiero a la *primera* ponencia escrita del Colegio de Abogados y Abogadas de Puerto Rico sobre el P. de la S. 130, por las razones que expliqué en la séptima nota al calce.

En San Juan, Puerto Rico, a 31 de octubre de 2025.


Nery Enoc Adames Soto
Juez de Apelaciones